# IN THE COURT OF APPEALS OF IOWA

No. 18-0090
Filed April 4, 2018

**IN THE INTEREST OF J.C.,**
**Minor Child,**

**K.C., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Linn County, Susan F. Flaherty, Associate Juvenile Judge.

A mother appeals from the termination of her parental rights to her child.

**AFFIRMED.**

Ellen R. Ramsey-Kacena, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Kimberly A. Opatz, Linn County Advocate, Cedar Rapids, guardian ad litem for minor child.

Considered by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**DANILSON, Chief Judge.**

A mother appeals from the termination of her parental rights to her child, J.C., pursuant to Iowa Code section 232.116(1)(h) (2017).[1] The mother asserts the juvenile court should have placed J.C. in a guardianship with the mother's former step-mother, A.C., instead of terminating the mother's parental rights. The mother maintains termination of her parental rights to J.C. is not in J.C.'s best interests and exceptions apply to preclude the need for termination. Because the mother was granted additional time to seek reunification with J.C. and was not able to resume care of the child, we conclude termination of the mother's parental rights is in J.C.'s best interests and affirm.

**I. Background Facts & Proceedings.**

J.C. was born in January 2016 when the mother was fourteen years old. The mother has a difficult background involving abuse by her biological parents. The Department of Human Services (DHS) became involved with the mother in May of 2016 after her father came to her school to confront her about her truancy and assaulted her. It was reported the mother was not providing consistent care for J.C. and often left him in the care of A.C. Child-in-need-of-assistance (CINA) petitions were filed regarding both the mother and J.C.

In August 2016, the mother was placed in a residential treatment facility that allowed J.C. to remain in her care. In September 2016, J.C. was removed and placed in foster care because the mother had difficulty with the staff at the facility. The mother was discharged from the facility after running away twice and

---

[1] The father's parental rights were also terminated. He does not appeal.

assaulting a peer in the program. The mother was placed in another residential treatment facility and was again unsuccessfully discharged because she continued to be aggressive with staff and peers. The mother was then moved to Clarinda Academy in May 2017. J.C.—who had remained in foster care in Des Moines to be near the mother at the residential treatment facilities—was placed in the care of A.C. at that time.

At the time of the first termination hearing on August 1, 2017, the mother had been making improvements during her time at the academy. The mother was working through the program and anticipated release in October or November of 2017. She was participating in visitation with J.C. as much as possible, was receiving individual therapy and medication management, and exhibited very strong parenting skills. The mother requested additional time to seek reunification with J.C. or, in the alternative, asked that J.C. be placed in a guardianship with A.C. In an August 7, 2017 order, the juvenile court determined guardianship was not in J.C.'s best interests but granted the mother additional time to seek reunification with J.C. The court explained:

> While the court rejects the notion that a guardianship adequately addresses permanency for this child, the court does find that the grant of additional time to achieve reunification, as requested by the mother and the child's attorney/guardian ad litem, is in [J.C.]'s best interests. If, as [the mother] and [the father] both testified, their current placements are preparing them to assume parental responsibilities, considering the bond between [J.C.] and his parents, also considering the support that [the mother] and [the father] have from both [A.C.] and [the father's mother], the court finds that allowing an additional six months to achieve reunification of [J.C.] with a parent is in his best interest. That time frame will allow each parent the opportunity to successfully complete residential treatment and move to a setting that would allow them to have their child in their custody. It will allow each parent to follow through with the statements made at this hearing regarding their commitment to

making the necessary changes in their lives to safely assume full time care of this child.

Unfortunately, at the time of the second termination hearing on December 28, 2017, it was apparent the mother had not continued to make progress as anticipated. A DHS Family Case Plan report included a review dated November 9, 2017, which stated:

> [The mother] continues to be placed at Clarinda Academy. [The mother]'s behaviors have waivered and she continues to have issues with being in restraints due to being assaultive. [The mother] recently reported to this worker and [A.C.] that she does not think she wants to be a fulltime parent to [J.C.] and wants him to remain in [A.C.]'s care. [The mother]'s discharge date has not been determined at this time. She will likely discharge to foster care as she and [A.C.]'s relationship continues to waiver.

The court ordered the mother's parental rights to be terminated pursuant to Iowa Code section 232.116(1)(h). The mother appeals.

## II. Standard of Review.

We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We are not bound by the trial court's fact findings, but give them weight, especially in assessing the credibility of witnesses. *Id.* "Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis.

The mother's parental rights to J.C. were terminated pursuant to Iowa Code section 232.116(1)(h), which provides the court may terminate parental rights where the child is three years of age or younger, has been adjudicated a CINA, has been out of the parent's care for at least six months of the last twelve months or for the last six consecutive months, and there is clear and convincing evidence

the child cannot be returned to the parent's care at present. The mother does not contest the grounds for termination, and we find grounds exist under this provision. J.C. was under two years of age at the time of the termination hearing, was adjudicated a CINA, had been out of the mother's care for over one year, and could not be returned to the mother's care due to her placement at Clarinda Academy.

Nonetheless, the mother contends termination of her parental rights was not in J.C.'s best interests and exceptions apply that preclude the need for termination. The mother argues J.C.'s best interests would be served by placing him in a guardianship with A.C. Iowa Code section 232.116(2) guides our best-interests inquiry:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

In addition, the "legislature has established a limited time frame for parents to demonstrate their ability to be parents." *J.E.*, 723 N.W.2d at 800. The relevant time frame here is six months. *See* Iowa Code § 232.116(1)(h)(3). "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

While we are sympathetic to the mother's young age and difficult background, we must focus on the best interests of the child in this case. The

mother undoubtedly has exceptional parenting skills and has maintained a bond with J.C. However, the juvenile court had already granted the mother additional time to seek reunification based upon those considerations and the mother was unable to exhibit the progress necessary to allow J.C. to return to her care. At the time of the termination hearing, the mother did not have a set release date from Clarinda Academy and had no distinct plan for where she would reside after her release. The mother had also recently expressed she did not wish to be a full-time parent to J.C.

Regardless of whether the juvenile court entered a guardianship or terminated the mother's parental rights, J.C. was to remain in the care of A.C. A.C. testified she is willing to adopt J.C., and J.C. has bonded to A.C. after being in her care for an extended period of time. A.C. also testified she will continue to encourage the mother to have a relationship with J.C. Although the continuing relationship with the mother may be beneficial, we find J.C. has a greater need for stability and permanency. We conclude termination of the mother's parental rights is in J.C.'s best interests.

We also conclude it is not in J.C.'s best interests to place him in a guardianship with A.C., even though at first blush it appears to be a viable alternative. In recently considering this issue, our supreme court noted:

> Importantly, "a guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). If the court transferred guardianship and custody to the child's maternal grandparents, they would have to report to the court at least annually, and the guardianship would not terminate until the child reaches the age of majority—sixteen years from now.

*A.S.*, 906 N.W.2d at 477-78. In *A.S.*, the court determined because it could not conclude the mother's "parenting ability will improve in the foreseeable future to enable her to raise her child without ongoing help from others," it was "in the child's best interests to enable her permanent placement in an adoptive home." *Id.* at 475. The court agreed with the juvenile court in rejecting guardianship upon consideration of the child's young age; the length the child had been removed from the parent's care; the availability of other viable permanency options; and the child's need to achieve a stable, nurturing, and permanent home. *Id.* at 478.

Here, the juvenile court expressed its belief in the importance of permanency to a child:

> [T]o do a guardianship like this you have to plan that at some point between now and when [J.C.] is age [eighteen], at any point could be undone and he go elsewhere, I don't think that provides permanency. . . .
> I will tell you this: I strongly believe that kids need permanency. It is part of their developmental health, their mental health, their well-being to have attachments to a primary caregiver that they know will continue and that does continue . . . .

The court determined entry of a guardianship with the intent that the mother could one day seek to become a full-time parent of J.C. was not in J.C.'s best interests because it did not provide stability. We agree. In addition to stability, the guardian ad litem explained in her November 8, 2017 report that J.C. would be eligible for an adoption subsidy and health insurance if the mother's parental rights were terminated and he was adopted, which is to J.C.'s benefit. Termination of the mother's parental rights and adoption by A.C. would permit J.C. to remain in a safe and stable home to which he has grown accustomed, to maintain family relationships and his relationship with the mother, and to have the sense of stability

and permanency he deserves. Even if the child is adopted by another suitable parent or parents, J.C. would have the benefit of stability and permanency. We therefore find entry of a guardianship is not in J.C.'s best interests.

We also conclude no section 232.116(3) exception applies to preclude the need for termination. We acknowledge the strong bond between the mother and J.C. *See* Iowa Code § 232.116(3)(c) (providing the court need not terminate the parent's rights to the child if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). However, that bond does not outweigh J.C.'s need for permanency.

We also acknowledge the mother was unable to be reunited with J.C. at the time of the termination hearing, due in large part to her placement at Clarinda Academy. *See id.* § 232.116(3)(d). But the mother was provided additional time to complete the program and to be released prior to the December 28, 2017 hearing and had not achieved that progress. In fact, during this extension of time, her behaviors at Clarinda became combative towards peers and staff and she had to be placed into restraints. We acknowledge the mother's difficult road to recover from her own past trauma, and that she continues to have needs to address her own maturity and behavioral issues. Time is a critical element in these proceedings notwithstanding the mother's own young age and needs. Children are not equipped with pause buttons while the parent attempts to address their own needs. *See In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems.").

**IV. Conclusion.**

We find entry of a guardianship is not in J.C.'s best interests and we do not find any of the section 232.116(3) exceptions outweigh the need for termination in this case. *See In re A.M.,* 843 N.W.2d 100, 113 (Iowa 2014) ("'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion 'based upon the unique circumstances of each case and the best interests of the child, whether to apply the factors . . . .'" (citation omitted)). We affirm.

**AFFIRMED.**